DuNKIN, Ob.,
dissenting. In Gannon vs. Setzler, 6 Rich. 471, tbe Court of Errors expressed strongly tbe opinion, that tbe existing state of tbe law upon tbe subject of tbe attestation of wills was proper matter for legislative interference. “To tbe Legislature it belongs” (in tbe language of tbe Court) “to extricate tbe whole subject from tbe perplexity in which legislation has involved it. To tbe Court it belongs to expound and apply tbe law; amendments of it, and more especially of • tbe Statute law, however desirable they may appear, must be referred to tbe wisdom of another branch of tbe government.”
I am unable to concur in this decision, because I regard it as an encroachment upon tbe rights and duties of a co-ordinate part of tbe government — as a legislative, and not a judicial act. As an act of legislation, (in tbe construction which I give to tbe opinion) I regard it as incomplete and of doubted expediency.
It seems now to be generally conceded that tbe competency of tbe witness must be referred to tbe period of attestation. Upon tbe death of tbe testator, tbe legal title, in all bis personalty, becomes vested in tbe executor, and, according to tbe law and usages of this State, be has an extensive control over tbe realty. It is a very imperfect view, to measure tbe bias of such person, in favor of supporting such instrument, by tbe commissions be may receive upon bis financial operations. Places of honor, and trust, and influence, have their affections as well as offices of profit, and are not less eagerly sought. In Taylor vs. Taylor, 1 Rich. 531, some of tbe reasons are stated why tbe case of an executor was not within tbe terms, as it clearly was not within tbe purview or intention of tbe statute 25 G-eo. 2. It is not proposed to re-produce what is there stated. But tbe Statute 1 Victoria, c. 26, enacted in 1837, leaves little doubt as to tbe construction of tbe statute *532 upon ^his subject in tbe country where it was made. Under the statute of Victoria, wills of land and personalty are placed on the same footing. By the 15th section, the provisions of the statute 25 Greo. 2, are, in terms, re-enacted, (extending their application to the case of husband or wife). If an executor had any such disqualifying pecuniary interest, as was contemplated by the statute, it was thereby removed: according to the construction now adopted. But, under the law of England, an executor is entitled to no commissions, nor is he now entitled to the undisposed of residue. Nevertheless, in order to qualify him to be a competent witness, under the statute of wills, it was deemed proper to provide a separate clause. By the 17th section, it is enacted, “ that no person shall, on account of his being an executor of a will, be incompetent to be admitted a witness to prove the execution of such will, or a witness to prove the validity or invalidity thereof.’’ This was a strong act of the Imperial Parliament, giving competency to a witness apparently disqualified by his character. Many reasons would commend a similar policy to the Legislature of South Carolina. To take away a legacy injures no one but the unfortunate witness; but to take away the office of an executor — to remove one whom the testator has selected to stand in his place — would, not unfrequently, strike out the most important clause of the testator’s will, and frustrate Ms scheme for the management and distribution of his projserty. On the other hand, to declare that he shall have no compensation if he assume the duties, will only add to the motives for declining an onerous and thankless office. But these are mere considerations of expediency, addressing themselves to the law-making power.
The effect of the decision, now announced, is to take away the office of an executor, without the sanction of any law, or to deprive him of commissions for the discharge of his duties, which are secured to every executor by the Act of 1789.

Motions granted.